## Sarver Adoption Case.

Argued March 23, 1971. Before BELL, C. J., JONES,
EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, J.J.

*Lois J. McKee,* for appellant.

*M. David Turets,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 12, 1971:

This is an appeal from a decree of adoption and the dismissal of a petition for writ of habeas corpus filed by Elizabeth Lee Sarver, the natural mother of the adoptive child. In approving the adoption and dismissing the natural mother's petition, the court found that Mrs. Sarver had abandoned her daughter. Mrs. Sarver filed exceptions, which were dismissed after a hearing on November 27, 1970, with one judge filing a dissenting opinion on the issue of abandonment, although he agreed with the dismissal of the habeas corpus petition and the resultant decision that the child should remain in the custody of her aunt and uncle, appellees.

The facts of this unfortunate case are as follows:

The child, Julie Mae Sarver, was born on November 21, 1958, in Liberal, Kansas, approximately six weeks after her natural father, Wilburt Arthur Sarver, had been killed in an automobile accident. In February of 1959, Julie, her mother, her two older brothers and her older sister came to live with her paternal aunt, Sylvania Sarver Polka, and her husband, Edward Polka, who are the appellees in this case. In July of 1962, Elizabeth Sarver and her three older children left the Polka residence, leaving four-year-old Julie Mae with the Polkas. The Sarvers and the Polkas exchanged visits frequently during the years 1963 and 1964. In 1965, the Polkas decided that they would like to adopt Julie, and Elizabeth Sarver apparently agreed to the adoption. However, Elizabeth Sarver changed her mind and never signed the consent contained in the adoption papers which had been prepared.

Nevertheless, after Christmas of 1965, Elizabeth Sarver never visited her daughter, or made any serious at-

tempt to visit her daughter, up to the time the instant petition for adoption was presented in 1969. During that period of time, the Polkas paid for Julie's entire support, never requesting or receiving any contributions from Elizabeth Sarver.

There was conflicting testimony concerning what attempts, if any, Elizabeth Sarver made to contact Julie during the four-year period. The parties agree that Mrs. Sarver sent Julie a Christmas card and a birthday card in 1965 and again in 1966. The Polkas testified that one additional note was sent. They admit that none was ever shown to Julie because they were addressed to "Julie Mae Polka" from "Betty and Clyde," (Clyde was Elizabeth Sarver's brother-in-law, friend and boarder) at a time when all had agreed to proceed with the adoption, but Elizabeth Sarver had not yet signed the papers. The record indicates that Mrs. Sarver made no attempt to contact Julie or showed any interest in Julie whatsoever in 1967 or 1968, even though Mrs. Sarver admits that she knew that her cards were not being delivered, and she knew at all times where Julie lived and where Julie went to school. It was this latter fact, more than any other, which caused the court to find that "Elizabeth Lee Richmond Sarver did in fact abandon her daughter, Julie Mae Sarver, for a period in excess of six (6) months, from Christmas of 1965 to October of 1969."

The termination by the law of a natural parent's rights to his child on the grounds of abandonment is one of the most severe steps the court can take. The finality of the termination and the harsh connotations of a finding of "abandonment" carry great emotional impact on both the child and the parent. For this reason, our law has been unwilling to tell a child that he has been "abandoned" by a natural parent, and has been unwilling to label a parent as one who has "aban-

doned" his child unless the record clearly warrants such a finding. *Rettew Adoption Case,* 428 Pa. 430, 239 A. 2d 397 (1968).

As we said in our recent discussion of this issue, *Hunter Adoption Case,* 421 Pa. 287, 292, 218 A. 2d 764 (1966), citing *Harvey Adoption Case,* 375 Pa. 1, 6, 99 A. 2d 276, 279 (1953) : "In order to sustain [a finding of abandonment], it must appear that the parent intended to give up the child absolutely, never to claim it again, and that this intention was manifested for a period of at least six months. . . . Therefore, any action on the part of appellant within this period inconsistent with 'a settled purpose' to relinquish her parental claim to the child would preclude a finding of abandonment." Mrs. Sarver's explanation for why she ended all contact with Julie in 1965 was as follows: "Mrs. Polka wanted me not to come back any more because she said it was confusing the child that she should have two mothers. I did not want to upset the child, so I said: All right. If you think it is better for the child, then I will respect your wishes because I did not want to upset my own child."

We believe that these motives are inconsistent with a finding that Mrs. Sarver intended to abandon Julie. Equally inconsistent with such a finding was evidence that during the period in question Mrs. Sarver had written cards to Julie and had sent her older children, Julie's older brothers and sisters (whose legal family ties would also be terminated if the adoption decree were upheld) to visit Julie regularly, sometimes taking gifts from their mother.

In view of the refusal of the Polkas to deliver any notes which Mrs. Sarver's had mailed personally to Julie, we believe that Mrs. Sarver's failure to continue such correspondence should not be considered as evidence of an intent to abandon Julie.

The Polkas emphasize that the court found that Mrs. Sarver had failed to show "one iota of interest" in Julie during 1967 and 1968. Although we do not disagree, we believe that Mrs. Sarver's behavior was based on her view of the child's best interests and can be excused because of the emotional and financial strain under which she labored.

It must be kept in mind that the court below awarded custody of Julie to the Polkas and that finding will not be disturbed by our opinion. The welfare of the child is to be considered in custody proceedings, but has no relationship to the issue of abandonment in adoption proceedings. *Schwab Adoption Case*, 355 Pa. 534, 50 A. 2d 504 (1947).

Our decision can in no way be taken as condemnation of either the Polkas or Mrs. Sarver. All were faced with a difficult emotional problem, and all acted in what they felt was Julie's best interests. Furthermore, if Julie wishes to become the adopted daughter of her aunt and uncle when she becomes eighteen years of age, the law permits her to do so.

Decree of adoption reversed, each party to pay own costs.