## In Re Lightner

*Ambrose R. Campana,* for petitioner.
*Richard H. Roesgen,* for respondent.

WOOD, J., March 16, 1972.——Ruth Guinter has presented her petition for the involuntary termination of the parental rights of Philip Lightner as to their child, Susan Lightner. After hearing we make the following

### FINDINGS OF FACT

1. Susan Lightner was born on May 7, 1968, to Philip and Ruth Lightner, who were husband and wife.
2. Philip and Ruth Lightner separated in June of

1970 and were divorced November 27, 1970, by proceedings in this county.

3. Ruth Lightner married Mark Guinter on April 6, 1971, and resides with him in this county.

4. Following the separation and continuing to the present, Susan has been in the custody of her mother.

5. The father paid nothing toward the support of Susan from the time of separation to the time of hearing.

6. The father was employed at various jobs for a substantial portion of the time between the separation and the filing of the petition.

7. The mother took Susan from this county to Minneapolis, Minn., on November 1, 1970, returned to Lycoming County for a week on December 21, 1970, and then returned to Minneapolis on December 29, 1970, remaining there until April of 1971, when she returned to Lycoming County.

8. The father went to Ohio in January or February of 1971 to work, and returned to Lycoming County in April of 1971.

9. The father made no substantial, good faith efforts to determine the whereabouts of the mother and Susan either while they were in Minneapolis or upon their return in April of 1971.

10. The address of the mother and Susan while in Minneapolis was known to members of her family, to members of her present husband's family and to her attorney.

11. The father knew the general whereabouts of the mother and Susan in January of 1971.

12. The father made no gifts to Susan and did not correspond with her from the time of separation until the filing of this action.

13. The father made no efforts to visit with Susan between December of 1970 and October of 1971.

14. A habeas corpus petition was filed by the father on October 16, 1970, for which a hearing was scheduled for October 26, 1970. The matter was postponed, and was not pursued by him until November 11, 1971, after the date of the filing of this petition on October 26, 1971.

15. There was a period of over six months after the separation during which the father failed to perform his parental duties with respect to Susan. During the same period, he demonstrated a settled purpose of relinquishing parental claim to her.

16. The welfare and best interests of Susan will be fostered by the granting of a decree terminating the parental rights of the father.

## DISCUSSION

Section 311 of the Adoption Act of July 24, 1970, P.L. 620 (No. 208), art. III, sets forth the grounds for involuntary termination of parental rights in a child. Specifically, subsection (1) provides that such rights may be terminated on the grounds that the parent "by conduct continuing for a period of at least six months has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties." Thus, there are now two distinct grounds. Formerly these were elements of the single statutory ground of abandonment. In light of this, we consider the decisions of our courts dealing with the subject of abandonment under the former Adoption Act may be used as guides to the general principles here concerned.

Whether a parent has relinquished parental claim or has refused or failed to perform parental duties is a question of fact to be determined from the evidence, and, as with abandonment, is a matter of

intention: Hunter Adoption Case, 421 Pa. 287 (1966). Because of the finality of severance, the rights of a natural parent should not be terminated unless clearly warranted by the record: Rettew Adoption Case, 428 Pa. 430 (1968).

Subsection (1) of section 311 of the Adoption Act of 1970, as did the former statutory definition of abandonment, clearly refers to performance or nonperformance of parental duties, and not to the existence of parental rights: Wischmann Adoption Case, 428 Pa. 327 (1968). As stated by the Supreme Court in the Smith Adoption Case, 412 Pa. 501 (1963), "The parental obligation is a positive duty and requires affirmative performance which may not be delayed beyond the statutory period by the parent if the parental right is not to be forfeited." The testimony in this case clearly and preponderantly demonstrates that the natural father of Susan, by conduct continuing for a period of six months evidenced a settled purpose of relinquishing his parental claim, and that he refused or failed to perform parental duties for the same period.

He paid nothing toward Susan's support from the time of separation in June of 1970. Such failure, though an important factor to be considered, does not alone, conclusively determine abandonment: Southard Adoption Case, 358 Pa. 386 (1948). However, such failure, when established in a proceeding for involuntary termination on the ground of refusal or failure to perform parental duties, surely is a crucial factor in the court's determination. The duty of a father to support his child is basic to the relationship.

Lightner asserts that his failure to support was due, in part, to (1) a refusal by the mother to accept support from him; (2) a refusal of the mother to allow visitation rights; and (3) the lack of knowledge on his part of his child's whereabouts. We find these excuses to be without

evidentiary support. The father claims an offer of support only on one occasion after the separation, which claim was denied by the mother. The father admits he did not set aside the money he intended to give toward his child's support. Furthermore, it was established that he was employed during a substantial portion of the time between June 1970, and the filing of this action in October of 1971. Although the testimony establishes that there was an agreement reached between the parties in October of 1970 regarding visitation and support, there is no indication that the father ever made or attempted to make any support payments under this agreement. Also, we do not consider that the evidence reveals "a studied and settled plan" on the part of the mother to conceal from the father any knowledge as to the whereabouts of the child: Hangartner Adoption Case, 407 Pa. 601 (1962). The record reveals that the whereabouts of the mother and child were known to various members of her family, her present husband's family and to her attorney. It is not disputed that the father learned from his attorney late in 1970 or early in 1971 that she and Susan were in Minneapolis, although he claims he did not know the exact address. He did not go to Minneapolis in an effort to locate his daughter, or contact the persons who were known to him as being likely to be informed of her address. The testimony clearly indicates that the father made no good faith efforts to locate Susan and her mother. When questioned on his efforts to locate his daughter, respondent cited an instance or two when he and a friend went into a local bar to look for the mother. Such superficial attempts to locate his daughter cannot operate to excuse his continuing failure to support her. Moreover, the record is barren of evidence that he made any effort at all to locate his

child during the period he was in Ohio. The record also discloses that the father made no attempts to visit with Susan after December of 1970.

The father claims that he attempted to gain visitation rights immediately after the separation but gave up after several phone calls to the mother which failed to produce an arrangement for visitation. Although the mother permitted a visitation on at least one occasion, she did not fully cooperate with the father in arranging visitations. However, we do not consider that this lack of positive action on her part excused the father from the duty of supporting his child. His testimony does not demonstrate either the persistence or insistence expected of a father concerned with seeing his child. We consider that this is evidence of a course of conduct by which the parent has acquiesced in a termination of the very close relationship normally existing between parent and child, and has permitted the assumption by others of complete parental responsibilities: Davies Adoption Case, 353 Pa. 579 (1946).

The testimony also reveals that no Christmas or birthday gifts were given to Susan by her father in 1971, as well as the fact that no correspondence has ever been received by her from her father. He claims he attempted to give gifts to her which were refused by the mother. She denies this allegation, and the evidence in his favor is not persuasive.

Respondent asserts in his defense that a finding of involuntary termination cannot be made for the additional reasons that he had initiated a habeas corpus proceeding to gain custody of Susan, and that he purchased a life insurance policy naming her as beneficiary. We consider that the latter does not operate to fulfill a father's obligation to support his children.

With regard to the habeas corpus proceeding, initiated on October 16, 1970, the record reveals that a hearing scheduled for October 26, 1970, was not convened, although not through any fault of either parent. However, the father did not go forward with the proceeding until slightly over one year later, when on November 10, 1971, he petitioned the court to set a new hearing date. This request followed the filing of this action on October 26, 1971. Such inaction on the part of the father is evidence of a settled purpose of relinquishing parental claim to his child, and supports our determination that such a purpose was adopted by the father.

We consider that the statutory requirement as to time is satisfied; the father has not contributed support to Susan since June of 1970 and made his last attempt to visit her or find her whereabouts in December of 1970. From that point until a meeting between the parents in October of 1970, approximately 10 months passed in which the father neither communicated with, offered support for nor visited with his daughter.

Having concluded that the parental rights of the father must be terminated, it is the duty of this court to consider the welfare of the child: Jacono Adoption Case, 426 Pa. 98 (1967). The evidence clearly indicates that the welfare and best interests of this child will be served by terminating the parental rights of the natural father. The mother, in whose custody the care and responsibility for support of Susan has rested since the separation of these parties, has remarried and has established a home in the jurisdiction. The father, is presently living with a brother in Clearfield County, and is only employed part time. We determine that the welfare and future wellbeing of Susan will be best served by termination of the parental rights of the father, Philip L. Lightner.

## DECREE

And now, March 16, 1972, all parental rights of Philip L. Lightner with respect to Susan K. Lightner, are terminated. Custody of Susan shall continue with her natural mother, Ruth Guinter.