## In re Short

*Allen Cashman,* for petitioners.

MacPHAIL, P. J., May 23, 1974.—Petitioners filed a petition for the involuntary termination of parental rights under section 311 of the Act of July 24, 1970, P. L. 620 (No. 208), 1 PS §311. After hearing, at which petitioners were the sole witnesses, we make the following

### FINDINGS OF FACT

1. Tania Denise Short was born in Pennsylvania on or about August 25, 1972.

2. The mother of the subject resides in Deerfield, Fla., and is the sister of the female petitioner herein.

3. At the time of the conception and birth of the child, the mother was unmarried.

4. The father of the child is an unidentified Negro. The mother is Caucasian.

5. The mother came to Pennsylvania to live with petitioners five or six weeks before the child was due to be born.

6. Immediately prior to entering the hospital, the mother told petitioner that she was not going to keep the child and would give it up for adoption.

7. Petitioners persuaded the mother to keep the child after it was born, but about three weeks following the birth of the child, the mother went back to Florida and left the child with petitioners saying that she had no love for it.

8. On the child's first birthday, the mother sent to petitioners two outfits ahd a birthday card for the little girl.

9. The mother has never furnished any support for the child nor has she visited the child.

10. The mother refused to execute a formal consent for the adoption of the child by her sister and her husband, the petitioners herein.

11. The mother received written notice of this hearing and telephoned petitioners thereafter. She inquired for the first time about the child's weight and appearance. At that time she said she wouldn't waste the money on a plane ticket "because she knew she didn't have a chance for the things she had done."

## DISCUSSION

As was said in Sarver Adoption Case, 444 Pa. 507 (1971), at page 509:

"The termination by the law of a natural parent's rights to his child on the grounds of abandonment is one of the most severe steps the court can take."

Although the Adoption Act of 1970, supra, has expanded the grounds upon which parental rights may be terminated (see Owen Adoption, 51 D. & C. 2d 761 (1971)), still the responsibility of the court is a heavy

one, particularly where the natural mother does not appear and lives at a considerable distance from the site of the hearing. In a somewhat similar situation, we refused custody rights to maternal grandparents, but on appeal the case was remanded for further hearing: Sweezy v. Ross, 12 Adams 156 (1971), 219 Pa. Superior Ct. 752 (1971).

In Owen Adoption, supra, the court perceived a change in emphasis between the old Adoption Act of April 4, 1925, P. L. 127, as amended, 1 PS §2(c), and the new Adoption Act, as the two acts relate to termination of parental rights. In Owen Adoption, Judge Acker wrote, at page 768: "The parent must *now* make an effort to perform his parental duties." (Italics supplied.) However, even prior to the Adoption Act of 1970, supra, it was held that the parental obligation is a positive duty and required affirmative performance: Smith Adoption Case, 412 Pa. 501 (1963).

In the case now before us, we have reached the conclusion that petitioners' testimony is painfully honest. Neither petitioner attempted to hide the fact that they were unhappy with the mother's attitude toward the child during the three-week period that she cared for the child in their home, that they tried without success to obtain the mother's consent to an adoption, a fact which weighs heavily against any finding of abandonment, and that this proceeding obviously quickened the latent feelings of motherhood within the mother. But, as noted in Owen Adoption, at page 768: "A lingering hope to be a father is not sufficient in law or fact to satisfy the requirements of the statute. . . No longer may parents deny their children the opportunity to have the security of a father by adoption who will assume, and in many cases has for years previously assumed, the parental responsibilities which the natural father has so freely neglected."

It would not pervert the law nor change the force and effect of Judge Acker's opinion if we substitute the word "parent" for the word "father" in the language we have just quoted. "To abandon a child does not necessarily mean that the abandoning parent make any formal declaration to that effect, that she ignore entirely the child's existence, or that such parent entirely forego any interest in its welfare and its whereabouts": Hookey Adoption Case, 419 Pa. 583 (1966). In short, we conclude that petitioners have met their burden of proving that the rights of the natural mother should be terminated because she has refused or failed to perform her parental duties. It appears that the mother intends to let someone else raise her child gratuitously while she retains all legal rights to the child. This, the mother cannot do. She must either perform her parental duties, submit valid reasons why she cannot or has not performed those duties, or forfeit her rights as parent.

To further protect the natural mother's rights and to afford her ample opportunity to be heard, although we have already delayed unduly the filing of this opinion in the hope and with the prospect that the mother would assert some rights to her child, should she desire to do so, we will enter a decree nisi.

## DECREE NISI

And now, May 23, 1974, it is hereby decreed that the prayer of the petition to terminate involuntarily the parental rights of Sheila Kaye Short to her child, Tania Denise Short, be and the same is hereby granted. The clerk of courts is directed to cause a certified copy of this opinion and decree to be sent to Sheila Kaye Short, 440 South East Second Avenue, Apartment 6-C, Deerfield, Fla. 33441, by certified mail, return receipt

requested, with instructions to deliver to addressee only.

Unless exceptions or objections are filed hereto within 30 days of the date hereof, the clerk shall enter this decree as a final decree.