486 A.2d 371

In re ADOPTION OF MICHAEL J.C.

Dr. GEORGE A. and Barbara A., Appellants,

v.

BARBARA C., Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 24, 1984.

Decided Dec. 28, 1984.

Reargument Denied March 8, 1985.

518

Howard Richard, Media, for appellants.

Suzanne Noble, Chester, for Barbara C.

Joseph E. Lastowka, Jr., Media, for Michael J.C.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

McDERMOTT, Justice.

At issue in this appeal is whether the order and judgment of the Orphans Court of Delaware County terminating the parental rights of appellee under Section 2511(a)(2) of the Adoption Act of 1980,[1] was supported by clear and competent evidence. The circumstances surrounding this case are set forth below.

Appellee, Barbara C., was seventeen years old when she gave birth out of wedlock to Michael J.C. (child) on April 24, 1981.[2] At some point prior to delivery appellee decided she

1. Act of October 15, 1980, P.L. 934, No. 163, § 1 *as amended,* 23 Pa.C.S. § 2101 *et seq.*

2. The putative father had disclaimed paternity. Pursuant to Section 2511(a)(1), 23 Pa.C.S. § 2511(a)(1), the Orphans Court by order dated

would not be able to raise the child and therefore chose to place him or her for adoption. Appellee discussed the adoption plans with her family and with her therapist, Dr. Seidel.

Dr. Seidel called Human Services, Inc. concerning the possible adoption. Appellants, George and Barbara A., learned of this call and then asked their attorney, Madeline Tomlinson, to act as an intermediary and to contact appellee. After fully discussing the question of adoption appellee decided it was the correct course of conduct.

Several weeks prior to delivery appellee appeared before the Orphans Court with her mother and the attorney to confirm that she was to be provided with the payment of three thousand dollars for her recuperative expenses.[3] This arrangement was agreed upon. At this time appellee expressly rejected the alternatives to adoption suggested by the court, and remarked that the child would have a "better life" if he or she were raised in a normal family setting with a mother and father.

Several days after the birth of the child appellee executed an Affidavit of Consent and gave the child to her attorney who subsequently delivered him to appellants, George and Barbara A., who were to adopt him. On June 8, 1981, a report of intention to adopt was filed. Two months later, on August 12, 1981, appellee filed a petition for habeas corpus seeking the return of the child. Appellants responded by filing a petition for the involuntary termination of the parental rights of appellee. Following a hearing before the Honorable President Judge Francis J. Catania held on January 5, 6 and 7, 1982, appellee's parental rights were terminated pursuant to Section 2511(a)(2), 23 Pa.C.S. § 2511(a)(2). Appellee appealed and a Superior Court panel affirmed (Lipez, J. dissenting). Appellee's petition before the court

January 7, 1982, terminated his parental rights. He did not appeal that order.

3. Appellee did not use the money for recuperative purposes. Instead she spent all but $27.00 of the sum on a car stereo, clothes and vacations at the shore. (N.T. 23, 30–31.)

*en banc* was granted. The Superior Court *en banc* reversed (McEwen, J. dissenting) the ruling of the Orphans Court. Appellant herein petitioned this Court for appeal and we granted allocatur. After consideration we reverse.

In making the determination to involuntarily terminate parental rights the court must be satisfied that the party seeking to terminate the rights has established by "clear and convincing" evidence that grounds exist justifying that termination. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re T.R.*, 502 Pa. 165, 465 A.2d 642 (1983). Following the involuntary termination of parental rights by the Orphans Court our scope of review is limited to determining whether the decree of termination is supported by competent evidence. *In re Adoption of B.D.S.*, 494 Pa. 171, 431 A.2d 203 (1981).

Instantly, appellee's parental rights were terminated following the determination by Judge Catania that the three conditions found in Section 2511(a)(2), which would result in termination had been met. These include: 1) repeated and continued incapacity, abuse, neglect or refusal, which 2) has caused the child to be without essential parental care, control or subsistence, and 3) the causes of this incapacity, abuse, neglect or refusal cannot or will not be remedied. 23 Pa.C.S. § 2511(a)(2); *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975).[4]

In his opinion Judge Catania detailed the evidence which demonstrated appellee's consistent inability to maintain any semblance of stability, and led him to conclude that the termination of her parental rights was warranted.

Appellee's troubled history began when she ran away from home as a young teenager, and was later admitted to the Delaware County Children's Cottage following physically abusive behavior toward her mother. Appellee was also physically and verbally abusive to children for whom she baby-sat. At the termination hearing appellee denied ever having physically assaulted a child for whom she was

---

**4.** The language in Section 2511(a)(2) is the same as that of its predecessor Section 311(2) of the Adoption Act of 1970, which was cited by this Court in *In Re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975).

babysitting, but she admitted having done so to the police at the time of the alleged assault.

Evidence on the record also indicated a pattern of illegal drug and alcohol abuse by appellee. This destructive behavior resulted in appellee's hospitalization for a drug overdose after having consumed alcohol and "angel dust." Appellee was also treated at a mental hospital as a result of her suicide threats, and she was diagnosed as drug dependent, alcohol dependent and a depressive neurotic.

Appellee's sexual history was also subject to severe criticism. This history included sharing an apartment with another juvenile at the age of sixteen and engaging in sexual intercourse with whomever she happened to be dating at the time. Appellee's brother told appellee's father that the fact that appellee had met a boy only one half hour earlier did not prevent her from having sexual intercourse with him.

Appellee also had a history of exhibiting a violent temper towards friends and members of her family. This included physical abuse of her mother along with an assault upon one of her closest friends. That assault resulted in formal charges filed against her. Charges were also made that appellee was either unable or unwilling to maintain sanitary living conditions. These charges were substantiated by testimony of a friend of appellee, and from the landlord, that her apartment was uninhabitable, with dog feces on the floor, and walls covered with obscene language. Additionally, a large hole remained in one of the walls where appellee threw a saxophone during an argument with her mother.

Appellee also demonstrated an inability to maintain passing grades in school despite her stories to the contrary. Appellee eventually dropped out of high school, although she has since obtained her G.E.D. Despite the fact that appellee has not indicated a penchant for academia she testified that she plans to go back to school, obtain employment, and also take care of her child. Appellee plans to finance all these efforts through public assistance and the help of her grandmother with whom she is currently living.

Appellee would also be relying on her grandmother for help in the day to day care of the child.[5]

■ The evidence listed above clearly supports the Orphans Court's determination that appellees chances of carrying out the necessary parental duties are at best dismal. This determination was further bolstered by two psychiatric experts who testified at the termination hearing. Leo C. Freeman, M.D. and Herman M. Staples, M.D. both examined appellee a short time before trial. Dr. Freeman testified that it was his opinion that the child would be *endangered* if he were placed with appellee. Dr. Freeman explained that given appellee's marked emotional instability, with little tolerance for frustration and limited capacity for mature judgment, the child's welfare was at stake and *the chance of psychological damage was great.* Dr. Freeman concluded that "she was in no position at this time to assume the responsibility of an infant."

Dr. Staples, who is a specialist in child psychiatry, diagnosed appellees condition as "severe personality disorder of the histrionic type" and that because of this condition she would not be able to be a "desirable, effective parent." Dr. Staples was not optimistic concerning appellee's prognosis since he did not feel she would be able to sustain the long work that goes into effective psychotherapy. Additionally, Dr. Staples testified that often this type of personality disorder continues all through adolescence and through a good part of adult life. According to Dr. Staples he did not expect appellee to change, if it all, in any significant way until she was thirty-five or forty.

After this testimony, in addition to testimony regarding past behavior patterns, Judge Catania expressed his opinion, stating:

Barbara C. [the natural mother] has shown a repeated and continued incapacity to parent, and the causes of said abuse have not been remedied within the meaning of the Adoption Act, 23 Pa.C.S. § 2511(a)(2);

5. Appellee ignores the fact that her grandmother would face great difficulty with this task since she suffers from a disabling nerve disease, in addition to chronic back problems.

Due to the psychiatric testimony and psychological testimony presented and the record of [the natural mother's] history this court does not believe the causes will be remedied.

Adjudication, N.T. January 7, 1982.

Appellee insists that the Orphans Court did not find conduct on her part which had caused her child to be without essential care, as required by Section 2511(a)(2); and that a court cannot base termination of parental rights on the "sheer speculation" that a parent's conduct might cause harm in the future. The Superior Court apparently agreed with appellee, holding that offensive behavior alone, absent an effect on the child, is not enough to terminate parental rights.

■ This court cannot agree with such a restrictive reading. Prior to the Adoption Act of 1970, the only basis for terminating parental rights was abandonment.[6] *Sarver Adoption Case*, 444 Pa. 507, 281 A.2d 890 (1971). However, along with the enactment of the Adoption Act came a concomitant expansion of the courts' power to terminate parental rights, addressing a number of additional circumstances. *Jones Appeal*, 449 Pa. 543, 297 A.2d 117 (1972). The legislature in adopting the Adoption Act concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties. *In re William L.*, 477 Pa. 322, 345, 383 A.2d 1228, 1239 (1978). Instantly, appellee has demonstrated that she would be incapable of meeting the child's essential needs. The state is therefore permitted to intervene to protect the "physical or mental well being" of the child. Although we are faced with a situation where the needs of the parent in keeping the child conflict with the interest of the child, the "legislature has mandated that the interests of the weaker party, the child, should prevail." *Id.*, 477 Pa. at 339, 383 A.2d at 1236.

6. The 1970 comment following 23 Pa.C.S. § 2511 notes that clause (2) suggested by Section 19(c) of the Revised Uniform Juvenile Act Court Act (1969), differs from abandonment in that ·it centers judicial inquiry upon the welfare of the child rather than the fault of the parent.

■ By interpreting the statute as the Superior Court has done, termination of parental rights would only result after a child has suffered physical, emotional or mental damage. We cannot agree. Neither the language of the Act, nor our case law, supports appellee's position that Section 2511(a)(2) requires a showing that a putative parent have an opportunity to inflict substantial physical or mental harm upon a child before the state can intervene. Rather, a more appropriate reading of the statute is that when a parent has demonstrated a continued inability to conduct his or her life in a fashion that would provide a safe environment for a child, whether that child is living with the parent or not, and the behavior of the parent is irremediable as supported by clear and competent evidence, the termination of parental rights is justified.

Order of the Superior Court is reversed, and the order of the court of common pleas is reinstated.

HUTCHINSON, J., concurs in the result.

FLAHERTY, J., files a dissenting opinion, in which NIX, C.J., and PAPADAKOS, J., join.

FLAHERTY, Justice, dissenting.

I dissent.. The evidence adduced in the instant case was insufficient, within the factual context presented, to support termination of appellee's parental rights under 23 Pa.C.S.A. § 2511(a)(2).

Appellee has never had an opportunity to demonstrate whether she would render proper parental care since the child in question was voluntarily surrendered to an intermediary (not an agency) for placement through a "private" adoption before appellee was even discharged from the hospital after giving birth to the child. The incidents relied upon by the Orphans' Court in support of its termination order occurred, to a large extent, at least one year prior to the child's birth and two years prior to the termination hearing. Much of the testimony in this case was predictive in nature, focusing upon expert opinions as to whether

appellee would *likely* fulfill the duties of a parent, although, under the factual circumstances presented, appellee had no *opportunity* to do so. Expert opinions which purport to predict matters so complex as the future course of an individual's behavior often do not have a high degree of reliability, and, where there is not sufficient additional evidence of parental incapacity pertaining to the relevant time period, it cannot be said that clear and convincing evidence of parental incapacity has been offered.

Such a conclusion does not, however, mean that appellee should be given custody of her child, for the determination of custody, which is governed solely by the best interests of the child, is an entirely separate issue from that of whether to terminate parental rights. A decision not to terminate parental rights in this case would not mean that the child must be allowed to suffer actual harm, in the custody of appellee, as a prerequisite to strengthening the case in favor of terminating parental rights in a future proceeding. A number of alternatives are available to safeguard the interests of the child, including foster care, supervision of appellee's household, and assistance to appellee in learning necessary parenting skills.

NIX, C.J., and PAPADAKOS, J., join this dissenting opinion.