## Wischmann Adoption Case.

328

Argued October 4, 1967.  Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Stanley Z. Goldberg,* with him *Markel, Markel, Levenson & Fisher,* for appellants.

*Harry Bowytz,* with him *Bowytz & Bowytz,* for appellees.

OPINION BY MR. JUSTICE EAGEN, January 9, 1968:

This is an appeal from a final decree of the Orphans' Court of Allegheny County granting a petition for the adoption of a child over the objection of the natural parents, and dismissing with prejudice the parents' petition for habeas corpus, seeking custody.

In approving the adoption, the hearing judge specifically found that the parents had abandoned the child for a period in excess of six months. This finding was subsequently affirmed by the court en banc.

The relevant facts are sufficiently detailed in the opinion of the court below and will not be repeated here. However, we have carefully scrutinized the record and are satisfied that the evidence, both quantitatively and qualitatively, supports the conclusion of the court below that the parents intended to give up the child involved absolutely and that this intention continued and was manifested for a period of at least six months.

Under the adoption law of Pennsylvania (Act of April 4, 1925, P. L. 127, §2, as last amended by the Act of June 30, 1947, P. L. 1180, §2, 1 P.S. §2(c)), if a parent or parents abandon a child for at least six months, and this fact is established to the satisfaction of the court, then adoption by others may properly be decreed even though the parent or parents do not consent thereto. See *Hookey Adoption Case,* 419 Pa. 583, 215 A. 2d 860 (1966), and *Smith Adoption Case,* 412 Pa. 501, 194 A. 2d 919 (1963). "Abandonment" is defined in the statute as "conduct on the part of a parent which evidences a settled purpose of relinquishing parental claim to the child and of refusing or failing to perform parental duties." To be effective, this conduct must be shown to have "continued for a period of at least six months." Act of April 4, 1925, P. L. 127, §1, as amended, 1 P.S. §1. Whether or not a child has been abandoned by its natural parents is a question of

fact to be determined from the evidence and is a "matter largely of intention." See *Gunther Adoption Case,* 416 Pa. 237, 206 A. 2d 61 (1965), and *Hunter Adoption Case,* 421 Pa. 287, 218 A. 2d 764 (1966). While "abandonment" should not be declared unless clearly established by the evidence (*Best Adoption Case,* 413 Pa. 253, 196 A. 2d 342 (1964)), we are satisfied that the instant record meets this test.

Further discussion is required, however, on the particular issue of "abandonment" by the natural father.

The child involved was born on September 16, 1963, and with the acquiescence of the unwed mother was placed in the custody of the foster parents on September 23, 1963, where it has continuously remained since then. The petition for adoption was filed on March 24, 1965. On February 2, 1966, the natural mother filed a petition for habeas corpus in the court below which was rejected without prejudice for technical reasons. On February 12, 1966, the natural parents were married. On March 1, 1966, they instituted a habeas corpus proceeding. By stipulation the hearing in this and the adoption proceeding was subsequently conducted simultaneously.

The record is barren of any indication of interest in the child on the part of the natural father before February 1966. Nevertheless, it is argued that an "abandonment" as to him may not legally be computed except from the date of his marriage to the mother. It is noted that in an adoption proceeding the putative father is not a party, is given no notice, is not named or described in the petition and need not consent to the adoption or be proved to have abandoned the child; but from the date he marries the mother and legitimates the child, the father is a necessary party to the adoption proceedings, is entitled to notice thereof, his name and information relating to him must appear in the adoption petition and he must either consent to the

adoption or be proved to have abandoned the child for six months. Thus it is argued that because the father has no rights in the adoption proceeding until his marriage to the mother he cannot be charged with abandonment until that time.

The flaw in this position is that it ignores the statutory definition of "abandonment" and fails to distinguish between parental rights and parental duties. As noted before, "abandonment" is defined in the adoption statute as "conduct on the part of a parent which evidences a settled purpose of relinquishing parental claim to the child and of refusing or failing to perform parental duties." Clearly this definition refers to the performance or nonperformance of parental duties, not to the existence or nonexistence of parental rights. A father's natural duty to love, to protect and to support his child are unrelated to his legal rights in an adoption proceeding. So also is the question of whether he abandoned the child.

Moreover, this position is inconsistent with the adoption statutes on several grounds. If a putative father could persist in refusing or failing to perform his parental duties for an indefinite time without terminating his parental rights, the chance that he would marry the mother and assert his rights would make the adoption of an illegitimate child frequently depend on the consent of the putative father. The statute provides, however, that "in the case of an illegitimate child, the consent of the mother *only* shall be necessary." Act of June 30, 1947, P. L. 1180, §2, 1 P.S. §2(c). Moreover, the indefinite duration of such a privilege would require that we give a very artificial meaning to the statutory provision that "the consent of a parent . . . who has abandoned the child, for a period of at least six months, shall be unnecessary." "Parent" would be restricted to mean a mother or a

father married to the mother. The six month time limit would be largely meaningless.

Finally apart from the statute, it would be unwise to compute a father's abandonment from the time of his marriage to the mother because this system would effectively exalt the position of a putative father by conferring on him a special privilege at the expense of the welfare of the illegitimate child, which is best served by easy placement with a couple who are willing to assume the parental duties.

Thus the lower court correctly considered the father's conduct prior to his marriage to the mother and properly found that the father had abandoned his child. However, the lower court's reasoning in refusing to compute the father's abandonment from the time of his marriage to the mother is unsound. It rests on the argument that the father's rights can rise no higher than the mother's. It is illogical, however, to attribute the conduct of either parent to the other. The responsibility for abandonment is essentially individual. A mother cannot be charged with abandonment because the father fails to perform his parental duties. Neither can the reverse be true.

The adoption petition in this case was filed prior to the marriage of the adoptee's parents. Since the adoptee was illegitimate when the petition was filed, it was necessary at that time to aver and prove only that the mother had abandoned the child for six consecutive months, not that the putative father had done so also. Act of June 30, 1947, P. L. 1180, §2, 1 P.S. §2(c). Moreover, it was required only that the adoptee's mother be formally notified of the hearing on the petition. Act of August 26, 1953, P. L. 1411, §5, 1 P.S. §3. When the natural parents married, just seventeen days before the hearing, the putative father's position in the proceedings became the same as the mother's. Since the putative father appeared at the hearing and was ob-

viously represented by counsel for the mother, however, the failure to notify him was cured. *Petition of Sulewski,* 113 Pa. Superior Ct. 301, 304-305, 173 A. 747, 748 (1934). The father was not prejudiced by the failure of the petition to aver that he abandoned the adoptee for six months. His abandonment was more than adequately proved. It would have been proper to amend the pleadings to conform to this proof. The failure to amend the petition is merely a formal defect. To invalidate the decree because of it would be senseless.

The appellants submit that an investigator's report relating to them was hearsay and should not have been admitted into evidence. The investigator's report in the official record refers to the appellants only by giving the mother's name, address, age, color and religion, and stating that she abandoned the child. Regardless of whether this information is hearsay, it is inconceivable that its admission into evidence could have been prejudicial.

If there were other information in the investigator's report, the record does not disclose it. Nothing in the lower court's opinion indicates that anything outside of the competent evidence in the record was relied on in reaching the decision, and that the evidence amply supports the lower court's decree.

Finally, the conclusion of the lower court that the welfare of the child will best be served by awarding custody to the adopting parents is clearly supported by the record.

Decree affirmed. Each party to pay own costs.

Mr. Justice ROBERTS dissents from the conclusion of abandonment by the natural mother.

Mr. Justice MUSMANNO took no part in the consideration or decision of this case.