360 A.2d 174

In the Matter of the Involuntary Termination of Parental Rights to Josephine Frances KAPCSOS and Michael Philip Kapcsos.

Appeal of John KAPCSOS.

In the Matter of the Involuntary Termination of Parental Rights to Jonathan Dana KAPCSOS.

Appeal of CAMBRIA COUNTY CHILD WELFARE SERVICES.

Supreme Court of Pennsylvania.

Submitted March 8, 1976.

Decided July 6, 1976.

52

Kenneth A. Magar, Cambria County Legal Aid, Johnstown, for appellant at No. 194.

Francis J. Leahey, Jr., Ebensburg, for appellant at No. 4.

Francis J. Leahey, Jr., Ebensburg, for appellee at No. 194.

Kenneth A. Magar, Johnstown, for appellee at No. 4.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On September 11, 1974, Cambria County Child Welfare Services ("welfare services") petitioned the Court of Common Pleas, Orphans' Court Division, to terminate the parental rights of John Kapcsos ("John") to his two children, Josephine (age eight) and Michael (age six),

54 and the parental rights of Rochelle Kapcsos ("Rochelle") to her son Jonathan (age three). After a hearing, the court entered a decree terminating John's parental rights to his two children but refused to terminate Rochelle's parental rights to Jonathan. Welfare services and John both appealed the orphans' court decree.[1] We affirm.

Welfare services' petition for involuntary termination of John's and Rochelle's parental rights were made pursuant to section 311(1) of the Adoption Act, which states:

> "The rights of a parent in regard to a child may be terminated . . . on the ground that:
>
> (1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties
> . . . ."

Act of July 24, 1970, P.L. 620, art. III, § 311(1), 1 P.S. § 311(1) (Supp.1975).

The hearing court, which hears the testimony and determines the credibility of witnesses, makes the initial determination whether abandonment has been established. The scope of our review is limited to determining from the record whether the hearing court's findings are supported by competent evidence. *Re: Adoption of M. T. T.,* 467 Pa. 88, 354 A.2d 564 (1976); *Shaeffer Appeal,* 452 Pa. 165, 305 A.2d 36 (1973); *Vaders Adoption Case,* 444 Pa. 428, 282 A.2d 359 (1971); cf. *Fickert Estate,* 461 Pa. 653, 658, 337 A.2d 592, 594 (1975). If such evidence appears in the record, we must affirm the hearing court even though the record could support an opposite result. *Schwab's Adoption Case,* 355 Pa. 534, 50 A.2d 504 (1947).

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1975).

The record contains the following evidence in support of the orphans' court decree. In March 1973, John was charged with committing certain crimes and fled Pennsylvania to New York. John and Rochelle were caring for three children at that time—Josephine and Michael, born out of wedlock to John and Muriel Kapcsos,[2] and Jonathan, born out of wedlock to John and Rochelle. Shortly after John left Pennsylvania, Rochelle became ill, and, because her illness was believed to have been caused by an attempted suicide, she was placed in a mental hospital for observation. On March 13, an employee of welfare services visited Rochelle at the hospital and asked her to consent to welfare services taking custody of the three children. Welfare services was not aware at that time that Rochelle was the mother of only one of the children—Jonathan. Rochelle acceded to welfare services' request. She stated that she was planning to move to New York City to reunite with John as soon as she left the hospital and would want to be reunited with the children after she set up housekeeping.

On May 29, 1973, Rochelle telephoned welfare services and requested custody of Jonathan. Neither John nor Rochelle made any inquiries concerning the two older children. Welfare services instructed her to appear before the New York City welfare department so that an investigation could be made of her living conditions. Rochelle followed these instructions and, in July 1973, the New York City welfare department reported to welfare services in Cambria County that Jonathan should not be returned to Rochelle.

Rochelle attempted to regain custody of Jonathan by satisfying the New York welfare services' requirements. Apparently, the principal obstacle to reunion was the lack of adequate housing. John worked as an apartment

2. Muriel Kapcsos could not be located when welfare services petitioned the court for termination of John's and Rochelle's parental rights nor is she a party to this appeal.

manager and had only a limited salary. Their apartment was furnished as part of his salary. John and Rochelle asked his employer for a larger apartment.

However, in January 1974, John lost his job through no fault of his own and the family was left with no income. In May 1974, John returned to Pennsylvania, was arrested and then incarcerated. Rochelle returned to Pennsylvania in late August and renewed her request to welfare services that Jonathan be returned to her custody.

Welfare services petitioned for termination of John's and Rochelle's parental rights the day after Rochelle made her request for custody of Jonathan. It located John at the Cambria County Jail and informed him of its intention to terminate his parental rights to Josephine and Michael. Appellant stated that he had no interest in Michael because Michael was not his child. He also displayed a total indifference toward Josephine, although he did admit that she was his child.

## I. *Appellant John Kapcsos' Appeal*

The record fully supports the orphans' court decree terminating John's parental rights. He fled from Pennsylvania in March 1973, and took no affirmative action to contact his two children or to preserve his parental rights until he opposed welfare services' petition in the orphans' court eighteen months later. The only contacts with welfare services while John and Rochelle were in New York City were made by Rochelle and concerned Jonathan. Neither parent expressed any interest in Josephine's or Michael's welfare or any desire to be reunited with them during their absence from Pennsylvania. John never informed welfare services of his location either while in New York or while in prison in Cambria County. He made no effort to arrange visits with the children while he was in jail, although the children were

nearby. Finally, when he was first informed of the petition to terminate his parental rights, he expressed indifference toward the two children and denied that he was Michael's father.

John's conduct during this eighteen month period evinces a total disregard for his responsibilities as a parent. As this Court stated in *Appeal of Diane B.*, 456 Pa. 429, 433, 321 A.2d 618, 620 (1974) (quoting *Adoption of JRF*, 27 Somerset L.J. 298, 304–05 (Pa.C.P.1972)):

> " 'Parenthood is not . . . a mere biological status, or passive state of mind which claims and declines to relinquish ownership of the child. It is an active occupation, calling for constant affirmative demonstration of parental love, protection and concern.
> . . . [A parent] must exert himself to take and maintain a place of importance in the child's life, and must exercise reasonable firmness in declining to yield to obstacles. Otherwise, he cannot perform the job of parent, and the parent-child relationship will deteriorate as the absent parent more and more gives his thoughts, attentions, concerns and priorities to his own life and associates.' "

Thus, a parent has a duty to love, protect and support one's children and to maintain communication and association with them. *McCray Adoption Case*, 460 Pa. 210, 331 A.2d 652 (1975); *Appeal of Diane B.*, supra; see *McAhren Adoption Case*, 460 Pa. 63, 331 A.2d 419 (1975); *Wischmann Adoption Case*, 428 Pa. 327, 237 A.2d 205 (1968). A temporary failure or inability to perform parental duties due to a parent's personal crisis precludes a finding of abandonment. *Re: Adoption of M. T. T.*, supra; see *McCray Adoption Case*, supra. However, a parent must exercise reasonable firmness in declining to yield to obstacles so that the parent-child relationship is maintained. *Re: Adoption of M. T. T.*, supra; *McCray Adoption Case*, supra; *Appeal of Diane B.*,

supra. John's actions here over a period of eighteen months fail to meet these minimal standards and fully support a finding of abandonment under section 311(1).

John also argues that the hearing court erred by not appointing counsel to represent the two children. This contention is raised for the first time on this appeal. He relies on *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), for the proposition that his children have a constitutional right to counsel in termination proceeding. This argument misconstrues the *Gault* decision and the nature of termination cases.

In *Gault* the Supreme Court of the United States recognized that, in juvenile delinquency proceedings, the state seeks to deprive the child of substantial freedoms not only to further the child's interest but also to protect the public. Thus, they are adversary proceedings which cannot be distinguished from adult prosecutions, and due process requires that the child be given assistance of counsel to insure that he is not wrongfully deprived of any substantial right. Id. at 34–42, 87 S.Ct. at 1447–51.

■■ In termination proceedings, unlike delinquency proceedings, the child's interest is usually represented by the contending parties. His interest is, of course, to be provided adequate parental care and subsistence. He has a right to remain with a natural parent who is providing that care and who wishes to continue the parent-child relationship. In such a case, the parent represents the child. The child has a right to the state's intervention to provide alternative care if the natural parent abandons him. In such a case, the party opposing the natural parent represents the child. Thus, in every termination proceeding, both parties purport to represent the child. Moreover, the court is also required to represent the interests of the child, and the court's resolution of the parties' dispute is necessarily based on insuring that the child's right is protected.

Many commentators argue that separate counsel for the child in custody and adoption proceedings would be beneficial in protecting the child's interests.[3] The Legislature, recognizing the potential benefits of counsel for the child, requires representation for juveniles in all juvenile court proceedings including dependency hearings. Juvenile Act, Act of December 6, 1972, P.L. 1464, § 20, 11 P.S. § 50–317 (Supp.1975); see *Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 324 A.2d 562 (1974). In contested dependency hearings, as in termination hearings, the court must determine whether the natural parent or the Commonwealth truly represents the child.

■■ However, the Legislature has chosen not to extend the statutory right to counsel for children to termination of parental rights proceedings under the Adoption Act. This Court has not been referred to any authority which argues that such representation is constitutionally required. In most cases, such a rule would simply provide an unnecessary co-counsel to one side. We therefore decline to hold that there is a constitutional right to counsel for the child in the context of termination proceedings provided that the child's interest is adequately protected by the court and the parties in the case. The court may, of course, appoint counsel or a guardian for the child on its own motion or on motion of a party if it determines such representation is necessary or beneficial. Here, nothing in the record indicates that the children's interests were not adequately represented. We cannot say that the court erred in not appointing counsel for the children on its own motion. We therefore affirm the or-

3. See e. g., Inker & Perretta, A Child's Right to Counsel in Custody Cases, 5 Family L.Q. 108 (1971); MacDonald, A Case for Independent Counsel to Represent Children in Custody Proceedings, 7 New England L.Rev. 351 (1972); Note, Appointment of Counsel for the Abused Child—Statutory Schemes and the New York Approach, 58 Cornell L.Rev. 166 (1972).

phans' court decree terminating John's parental rights to Josephine and Michael.

## II. *Appellant Cambria County Welfare Services' Appeal*

The record also supports the hearing court's determination that Rochelle did not refuse or fail to perform her parental duties toward Jonathan. Rochelle was forced to relinquish her child temporarily during a period of personal crisis. As the hearing court found: "[Rochelle] felt secure in the belief that the placing of the children with the Agency did not pose a threat to her parental rights to Jonathan." Her subsequent actions show that she attempted to re-establish a home for her son in New York City and attempted to comply with welfare services' requirements. Upon her return to Pennsylvania, she went directly to welfare services and again requested the custody of her child. Thus, Rochelle's actions to regain custody of Jonathan during her absence from Pennsylvania are in sharp contrast to John's inaction and lack of concern toward Josephine and Michael during the same period.

This Court has often recognized the seriousness of a finding of abandonment. See, e. g., *Re: Adoption of M. T. T.,* supra; *In re Fritz,* 460 Pa. 265, 333 A.2d 466 (1975); *McAhren Adoption Case,* supra; *In re: Adoption of R. I.,* 455 Pa. 29, 312 A.2d 601 (1973); *Sarver Adoption Case,* 444 Pa. 507, 281 A.2d 890 (1971). In *Sarver,* we stated:

"The termination by the law of a natural parent's rights to [her] child on the grounds of abandonment is one of the most severe steps the court can take. The finality of the termination and the harsh connotations of a finding of 'abandonment' carry great emotional impact on both the child and the parent. For this reason, our law has been unwilling [to find abandon-

ment] unless the record clearly warrants such a finding."

444 Pa. at 509–10, 281 A.2d at 891.

Thus, we have refused to find abandonment when a parent has failed to contact welfare services for a period of six months if the lack of contact is caused by a parent's personal crisis and if the parent uses all reasonable means available to preserve his parent-child relationship. *Re: Adoption of M. T. T.,* supra. As we stated in *M. T. T.*:

"Appellant was facing a crisis situation . . . and had no means to care for or support his child. However, these circumstances alone cannot justify a finding of abandonment. *McCray Adoption Case,* 460 Pa. 210, 331 A.2d 652 (1975); *McAhren Adoption Case,* supra; *Appeal of Diane B.,* supra, 456 Pa. at 434, 321 A.2d at 620. Abandonment may be found only if [a parent] fails to use all available resources to preserve his parental relationship."

467 Pa. at 97, 354 A.2d at 568. See *McCray Adoption Case,* supra, 460 Pa. at 217, 331 A.2d at 655.

■ Here, the evidence supports the hearing court's determination that Rochelle used "all available resources" to preserve her parental relationship during a period of personal crisis. This Court may not reverse that determination, particularly given the seriousness of a finding of abandonment and the limited scope of our review.

Decree affirmed.

POMEROY, J., filed a concurring opinion.

MANDERINO, J., filed a dissenting opinion in which NIX, J., joined.

O'BRIEN, J., dissents from part II of the opinion.

POMEROY, Justice (concurring).

I agree with the majority that the orphans' court decree should be affirmed. I add this separate statement only because I believe that the question whether a child has a right to representation by counsel in proceedings initiated to terminate involuntarily his parent's parental rights is not properly before us in this appeal. The majority tackles this difficult question notwithstanding the concession that the issue is raised for the first time on this appeal and without discussion of whether appellant has standing to assert this claim. Assuming without deciding that a father has standing to assert his child's entitlement to counsel, it is my view that appellant John Kapcsos has waived his right by failing to raise this objection at the hearing below. See *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975) (procedural due process claim waived because not asserted at hearing below); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

MANDERINO, Justice (dissenting).

I disagree with the majority's assertion that children have no right to counsel at termination of parental rights proceedings. Children have interests independent of their parents or the state and deserve independent legal representation to protect those interests.

As the majority points out, the Legislature has recognized the potential benefits of counsel for children. Representation for juveniles is required in all juvenile court proceedings, including dependency hearings which can result in the removal of a child from his or her parents' home. That the Legislature has not yet extended the right to counsel to proceedings under the Adoption Act should not deter this Court from now requiring such representation. Under our supervisory rule-making powers, we can and should require counsel for children in all adoption and termination of parental rights proceedings.

To do so is consistent with the Legislature's policy concerning legal representation of children, as manifested by Section 317 of the Juvenile Court Act, 11 P.S. § 50–317 (Supp.1975). In fact, since the termination of parental rights is a far more drastic result than a finding of dependency, it would be inconsistent not to require counsel at the termination proceedings.

As Judge Spaeth aptly stated in *Stapleton v. Dauphin Court Child Care Service*, 228 Pa.Super. 371, 324 A.2d 562 (1974), where it was held that a child was entitled to counsel in a custody proceeding under the Juvenile Act "[t]o say that the child is merely the subject of the proceeding, not a 'party' to it, would be to return to the child-as-chattel mentality." 228 Pa.Super. at 392, 324 A.2d at 573.

I would therefore remand for a new hearing in which the children are represented by counsel.

NIX, J., joins in this dissenting opinion.