406 A.2d 1370

**In re Amanda GREEN, a Minor.**

**Appeal of Amanda Green, natural mother.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1979.

Decided Oct. 23, 1979.

614

Alton P. Arnold, Jr., Mark Greenblatt, Neighborhood Legal Services Association, Pittsburgh, for appellant.

Alexander J. Jaffurs, County Sol., James A. Esler, Cheryl Allen Craig, Asst. County Sol., Pittsburgh, for appellee.

Before EAGAN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

LARSEN, Justice.

Appellee, the Allegheny County Institution District, petitioned the Court of Common Pleas, Orphans' Court Division of Allegheny County, for involuntary termination of parental rights and duties of the natural mother of Amanda Green, appellant's minor daughter. The petition alleged that appellant, Amanda's mother, failed to perform parental duties for a period of time in excess of six months and thus should have her parental rights involuntarily terminated under section 311(1) of the 1970 Adoption Act.[1] After a hearing on the matter, the lower court entered a decree, on August 9, 1978, which terminated appellant's parental rights and awarded custody of the child to appellee until such time as she is adopted. Appellant, thereupon, filed timely exceptions to the decree of the Orphans' Court. By order of the court en banc, these exceptions were dismissed, and this direct appeal followed.[2]

[1]. The Adoption Act of July 24, 1970, P.L. 620, § 311, 1 P.S. § 311 (Supp. 1964–78) provides:
   § 311. Grounds for involuntary termination
   The rights of a parent in regard to a child may be terminated after a petition filed pursuant to section 312 and a hearing held pursuant to section 313, on the ground that:
   The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties . . . .

[2]. Jurisdiction for this appeal is conferred by the Judiciary Act of 1976, July 9, P.L. 586, No. 142 § 2, *as amended*, 42 Pa.C.S. § 722(3).

The record established that Amanda Green was born to appellant and her husband, Carter T. Green, on March 19, 1965. At some period of time during her pregnancy, appellant became a patient at Mayview State Hospital, and she was not released therefrom until some six or seven months after the birth of her daughter. On April 21, 1965, the infant was adjudicated a "dependent" by the Juvenile Court of Allegheny County and, thereupon she was placed in the care of a foster home, supervision of which was transferred to Child Welfare Services, an agency of the appellee, on January 2, 1969. Amanda has lived in this foster home from shortly following her birth until the present time. After appellant was discharged from Mayview State Hospital, she began to visit with her daughter. Her contacts with Amanda were infrequent and sporadic, up to and including the period of time upon which appellee's petition for involuntary termination of parental rights was predicated.[3] According to appellee's petition: "from March, 1975 until December 14, 1976 [appellant] failed to visit the child or send any gifts, cards or letters to the child. During this time the mother did not financially support the child nor did she perform any parental duties whatsoever." [Petition, paragraph 6].

■ Appellant first contends in this appeal that the evidence and testimony were insufficient to establish that appellant had failed to perform parental duties for at least six months and that, accordingly, involuntary termination was not warranted. We disagree with appellant.

Testimony of caseworkers established that during this period of time, a period in excess of twenty months, appellant had but one contact with her daughter and this sole contact was occasioned by the presence of Amanda at the funeral service held for her father on January 7, 1976. This same testimony revealed that appellant neither contributed to Amanda's support nor did she send cards, gifts, or letters to the child to compensate for her absence. As to the

3. The record shows that appellant visited her daughter eight times in 1969, twice in 1970, once in 1971, four times in 1972, twice in 1973, six times in 1974, and once in 1975.

absence of contact with the child during the period set forth in appellee's petition, appellant justified her failure to visit by testifying that despite persistent efforts by telephone, she was unable to contact a caseworker assigned to her because of the frequent turnover of caseworkers at Child Welfare Services. On the basis of the evidence and testimony presented, the lower court concluded that "for two years [4] the [appellant] made virtually no attempt to perform affirmative parental responsibilities".

This certainly accords with what we have held, namely, that "parental obligation is a positive duty which requires affirmative performance." (citations omitted). *In Re Burns*, 474 Pa. 615, 624, 379 A.2d 535, 540 (1977). This affirmative performance embraces an aggregate of duties, for example, it requires " . . . financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child . . . [and] that a parent 'exert himself to take and maintain a place of importance in the child's life.' " (citations omitted). *Id.*, 474 Pa. at 624–5, 379 A.2d at 540. Utilizing this legal standard, the lower court found from the evidence and testimony that appellant failed to perform affirmative parental duties for a period of time well in excess of the statutory six-month period.

Furthermore, we have stated that the needs of the child whether "physical and emotional, cannot be met by a merely passive interest in the development of the child," *id.*, 474 Pa. at 624, 379 A.2d at 540; and certainly, the need for active support and guidance from appellant would have been even more imperative after the loss of a child's father.

Appellant justified her failure to visit with her daughter but once in twenty months by testifying that she was unable, despite persistent efforts by telephone, to contact a caseworker at Child Welfare Services who would arrange

4. The precise period of time for the failure of performance of parental duties embraced some twenty months. With the sole exception of the encounter at the father's funeral service, appellant had not visited the child for nine months prior to the funeral nor for eleven months following the funeral.

for visits between appellant and her child. Appellant attributed this difficulty to frequent turnover in caseworkers at the agency. In situations of at least analogous frustration and difficulty, this Court has held that we are not willing to "toll a parent's responsibilities . . . . Rather, we must inquire whether the parent has utilized those resources at his or her command . . . in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness 'in declining to yield to obstacles,' his other rights may be forfeited." (citations omitted). *Adoption of McCray*, 460 Pa. 210, 216–217, 331 A.2d 652, 655 (1975). Utilizing this standard of law and on the basis of the testimony presented and all legitimate inferences therefrom, the lower court concluded that "with minimal effort the [appellant] . . . could have learned the whereabouts of her child and the caseworker who was caring for her child." It is to be noted that the record shows that during the same period of caseworker turnover, appellant had no difficulty whatsoever in reaching a caseworker by telephone in order to arrange for the child's attendance at her father's funeral service.

In short, there was credible evidence upon which the lower court chose to conclude that appellant's actions, or more precisely, failure to act, spoke louder than her words. Furthermore, as this Court has frequently emphasized:

> The hearing court, which hears testimony and determines the credibility of witnesses, makes the initial determination whether abandonment has been established. The scope of our review is limited to determining from the record whether the hearing court's findings are supported by competent evidence. [citations omitted]. If such evidence appears in the record, we must affirm the hearing court even though the record could support an opposite result. [citations omitted]

*In Matter of Kapcos*, 468 Pa. 50, 54, 360 A.2d 174, 176 (1976).

Appellant contends, secondly, that the evidence and testimony were insufficient to establish that her conduct manifested "a settled purpose of relinquishing [her] parental

claim" to her child. We do not need to inquire as to the sufficiency of evidence to establish settled purpose in that under existing law "parental rights may be forfeited for failure to perform parental duties for a six-month period, *despite the absence of a settled purpose to relinquish parental claims.*"[5] (citations omitted) (emphasis supplied). *In Re Burns, supra,* 474 Pa. at 624, 379 A.2d 535, 539.

Appellant's third contention is that the lower court erred in allocating the burden of proof to appellant. There is no substance to this proposition. In support thereof, appellant cites the lower court's statement that said court did not believe that appellant's testimony "serve[d] her purpose in refuting the contention of the agency that she did not discharge her parental duties." This comment by the lower court is in no way indicative of who bore the burden of proof; it is simply a statement assessing credibility and the trier of fact is the sole judge of credibility. *Adoption of S. H.,* 476 Pa. 608, 611, 383 A.2d 529, 530 (1978).

Finally, appellant maintains that the lower court erred in not granting her motion to dismiss, made upon completion of the presentation of appellee's evidence and testimony. In short, appellant claims that appellee failed to carry out its burden of making out a *prima facie* case. This is but a recapitulation by appellant as to matters discussed above, and is accordingly without merit.[6]

**5.** While the opinion of the lower court concluded that the "record amply shows that the [appellant] . . . evidenced a settled purpose of relinquishing her parental rights *and* has failed and refused to perform her duties" (emphasis supplied), nonetheless the thrust of the entire opinion and the language of the decree itself make it apparent that the ground upon which termination of appellant's parental rights rested was the failure to perform affirmative parental duties for a period of at least six months.

**6.** Even if we take appellant's motion to be a motion for a compulsory nonsuit for insufficiency of the appellee's evidence, pursuant to Pa.R.C.P. Rule 1512, it is often repeated and well established that "in reviewing a denial of such motion, the evidence must be considered in a light most favorable to plaintiff, and he must be given the benefit of every inference and deduction reasonably to be made therefrom." (citations omitted). *Szukics v. Ruche,* 367 Pa. 646, 649, 81 A.2d 903, 905 (1951).

Since an affirmative response to the needs of the child is required and since at least six months passed during which time appellant did not perform any parental duties, we find the forfeiture of her rights permissible under the 1970 Adoption Act.

Decree affirmed. Each party to pay own costs.

MANDERINO, J., filed a dissenting opinion in which NIX, J., joined.

MANDERINO, Justice, dissenting.

I must dissent. The majority's reading of the 1970 Adoption Act whittles away the constitutional rights of a natural parent who is involved in an involuntary termination proceeding. The majority concludes that the involuntary termination of a natural parent's rights is "permissible" under the Act because appellant, a natural parent, failed to perform her parental duties during a period of more than six months. Contrary to the majority's notions about involuntary terminations, the question is *not* whether such a termination of an important right is merely permissible. Rather, the question is whether this important right *should* be terminated. *See In re William L.*, 477 Pa. 322, 383 A.2d 1228, *cert. denied*, 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978).

A review of the facts presented in this appeal also reveal that the Child Welfare Services (CWS) was less than cooperative when appellant did attempt to perform her parental responsibilities.

Upon appellant's release from a psychiatric hospital, appellant began visiting her daughter, who was under the supervision of CWS. These visits occurred continuously until March 1975. The visits, however, appeared to fluctuate with the changes in the caseworker. At trial appellant testified that she made persistent efforts to arrange visits

from March, 1975, through January, 1976, but because of the frequent turnover in CWS caseworkers, appellant's efforts were frustrated. Appellant's testimony was corroborated by a witness who listened by extension to a conversation between appellant and an employee of CWS. During the alleged time during which appellant failed to perform her parental duties, appellant had ten different caseworkers. It was acknowledged that when caseworkers are transferred, there was a lapse of time when nobody was in touch with appellant. The trial court dismissed the testimony on this matter and concluded that the location of the agency was well established. The trial court also concluded that it did not believe her testimony "in refuting the contention of the agency that she did not discharge her parental duties." The trial court also said that even if it believed appellant's testimony, her actions were not sufficient to show the "care" that the law requires for a child.

In this case, the agency's "breakdown" frustrated appellant's attempt to perform her parental duties, and the burden of proof was not on appellant to disprove a failure to perform parental rights. The burden of proof was on the Child Welfare Services to prove that appellant either failed to perform parental duties or has evidenced a settled purpose of relinquishing her parental claim.

Because CWS did not meet its burden of proof, appellant's rights should not be terminated.

NIX, J., joins in this dissenting opinion.