413 A.2d 670

**In re DEBORAH J. C. (Petition for Involuntary Termination of Parental Rights).**

**Appeal of JUDITH C.**

Supreme Court of Pennsylvania.

Submitted March 4, 1980.

Decided April 25, 1980.

8

Joseph D. Messina, Johnstown, for appellant.

James R. Cascio, Fike, Cascio & Boose, P. C., Somerset, for The Children's Aid Society of Somerset County.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

LARSEN, Justice.

This appeal is from a final decree entered in the Court of Common Pleas of Somerset County involuntarily terminating the parental rights of the mother, appellant, J.C., in her natural daughter, D.J.C. The essential facts are as follows. D.J.C. was born to appellant on June 4, 1969; on August 16, 1971, the child was placed by the lower court in the custody of Children's Aid Society of Somerset County (hereinafter called appellee). On December 20, 1978, appellee filed a petition with the lower court seeking involuntary termination of appellant's parental rights pursuant to Section 311(1) of the 1970 Adoption Act.[1] After hearings on the matter, the lower court entered a final decree dated August 24, 1979, granting the petition and keeping the child in the custody of

1. The Adoption Act of July 24, 1970, P.L. 620, § 311, 1 P.S. § 311 (Supp.1964–78) provides:
§ 311. Grounds for involuntary termination.
 The rights of a parent in regard to a child may be terminated after a petition filed pursuant to section 312, and a hearing held pursuant to section 313, on the ground that:
 (1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties; . . .

appellee until such time as she is adopted. This direct appeal followed.[2]

■ First, appellant contends that the evidence is insufficient to establish by a preponderance that she refused or failed to perform parental duties for a period of six months and that involuntary termination of her parental rights was consequently unwarranted. This Court has stated that the scope of our review in such a matter is to inquire "whether the orphans' court determination that appellant refused or failed to perform parental duties for at least six months is supported by competent evidence." (citations omitted). *In re Burns*, 474 Pa. 615, 624, 379 A.2d 535, 539–40 (1977). In *In Matter of Kapcos*, 468 Pa. 50, 360 A.2d 174 (1976), we further elaborated upon this scope of review when we stated:

> The hearing court, which hears the testimony and determines the credibility of witnesses, makes the initial determination whether abandonment has been established. . . If such evidence appears in the record, we must affirm the hearing court even though the record could support an opposite result (citations omitted). *Id.*, 468 Pa. at 54, 360 A.2d at 176.

In light of this standard and our careful scrutiny of the record, appellant's contention lacks all merit. The judge made the following relevant findings of fact upon which he based his conclusion that appellant refused or failed to perform her parental duties for the requisite statutory period:

> 24. [Appellant] has made no contact with her daughter . . . or with Children's Aid (appellee) from September, 1977 until after the Petition to Terminate was filed on or about January 2, 1979.[3]

* * * * * *

2. Jurisdiction for this appeal is conferred by the Judiciary Act of 1976, July 9, P.L. 586, No. 142, § 2, *as amended*, 42 Pa.C.S. § 722(3).

3. The petition to terminate was actually filed on December 20, 1978.

10

26. [Appellant] has failed to send any gifts or even a letter or postcard to her daughter since January, 1977 . . . .

Our review of the record shows that these findings of fact are adequately supported therein; in fact, the record clearly demonstrates that appellant's own efforts were not directed to rebutting the evidence upon which these findings rested; instead, her efforts were directed solely at attempts to explain them. It is to the cogency of this explanation that we must now turn.

■ Appellant argues that she was prohibited from visiting her child by an order of a prior court proceeding.[4] That order reads: "NOW, Tuesday, August 9th, 1977, we are now suspending all visiting orders until further Order of this Court; and, if [the mother] wants to re-establish visitation, she'll have to come back into court for a further order." Appellant maintains that because of this order she could not maintain an affirmative relationship with her child during the period of time upon which involuntary termination is based. This is clearly without merit. First, this order specifically states that visitation could be re-established if appellant herein would appear before the court to request visitation; this appellant failed to do. The record shows instead that she chose to sit on her rights even though she

4. This order came about as a result of the prior court's reserving a power to review a visitation consent order entered into by appellant and appellee. Said consent order came up for review on August 9, 1977. At that time, appellant, who had due notice of the review proceeding, failed to appear, choosing instead to involve herself in her own business affairs in Ohio. Purportedly, complications arose; but appellant chose to give priority to her personal business affairs over the court's review of appellant's visitations with her child. Her attorney was unable to explain his client's absence and apparent lack of interest. (According to appellant herein, she unsuccessfully tried to reach her attorney by telephone.) It is instructive to note that appellant chose not to appear at the hearing notwithstanding the fact that her attorney had, at a prior time, stressed the importance of her presence both by letter and by telephone. He warned that failure to appear might result in loss of visitation rights, and such did, in fact, occur.

had an attorney available to her.[5] Additionally, the record further reveals that appellant failed to express an interest in her child through those avenues which are sometimes urged as a substitute for direct love, care and parenting, such as, the use of cards, letters, gifts and financial support. We are satisfied, as was the lower court, that appellant did little or nothing to seek to preserve an affirmative parental relationship. She chose instead not to avail herself of those resources which were clearly within the ambit of her control. Therefore, she will not be heard now to blame "the system" for what in fact has transpired as a result of her failures to act.[6]

For the foregoing reasons, the decree of the lower court is affirmed.[7] Each party to pay own costs.

EAGEN, C. J., concurred in the result.

5. The only interest exhibited by appellant in regaining visitation rights with her child was when she made two appointments with her attorney in order, presumably, to discuss relevant courses of action. Appellant failed, however, to keep these appointments (scheduled for October 28, 1977 and November 3, 1977). Appellant's next contact with her attorney did not occur until after the instant petition for involuntary termination was filed by appellee more than one year later.

6. Not only does appellant chide the judicial system, she even blames her attorney for her inaction, arguing that because of him she was confused as to her legal rights. In particular, she alleges that he advised her that the order *purportedly denying visitation* was a "closed book" until she could marry the individual with whom she had been living since 1971. This advice referred to *custody* only. Appellant, however, maintains that she was confused as to her obligations for regaining custody as opposed to her obligations for re-establishing visitation privileges. The lower court rejected this contention and we agree. Appellant's own testimony to the court was that she did know the difference between custody and visitation.

7. Appellant also contends that there was insufficient evidence both to establish that she "evidenced a settled purpose to relinquish her parental rights" and to establish termination of parental rights under Section 311(2) of the Adoption Act. We do not reach the former matter since parental rights may be forfeited for failure to perform parental duties even if a settled purpose to relinquish parental claims is absent. Further, since there was sufficient evidence to terminate parental rights under Section 311(1), it is unnecessary to establish the termination pursuant to Section 311(2) of the Act. *See In Re Baby Boy Robinson*, 486 Pa. 604, 609, 406 A.2d 1365, 1368 (1979).